14 255
58 549

14 255
59 482

14 255
74 500

### HOLLY *against* BROWN and others.

If the mortgagor of articles of personal property belonging to a business establishment, dispose of such articles and convert them into money, and buy other articles with the avails, the title of these will not, by mere operation of law, vest in the mortgagee; yet if they are procured for the simple purpose of replenishing the establishment mortgaged, by supplying the place of lost or worn out articles belonging to it, and they become attached to, and incorporated with, it, they, by right of accession, follow its title.

Where *A* owned a building, and *B* was a tenant at sufferance of a room in such building, holding over after the termination of his lease from *A*; *C*, the owner of certain articles of personal property in such room, entered it and removed such articles therefrom; such entry being made by the direction of *A*, for the purpose of removing the property, but not as his agent for the purpose of making an entry; it was held, that these acts did not constitute such an entry upon the premises in behalf of *A* as would revest him with the possession.

Where the *gravamen* of an action of trespass consists in a breach of the plaintiff's close and also the asportation of his goods, and the plaintiff supports, or the defendant fails to answer, one of these allegations, the plaintiff will be entitled to recover.

In order to determine what constitutes the gist of the action of trespass, in contradistinction to what is mere matter of aggravation, it is only necessary to ascertain what allegations in the declaration describe a substantive ground of recovery in that kind of action.

To constitute an ouster of the tenant by the entry of the landlord, the entry must be *animo clamandi*, and for the purpose of taking possession, evinced by the acts and declarations constituting the transaction; which are to be submitted to the jury, for them to find, under the guidance of the principle here stated, whether they amounted to such ouster of the tenant.

If the plaintiff in trespass *qu. cl. fr.* be in possession of the *locus in quo* jointly

with any other person or persons, this is a sufficient possession to maintain the action.

Where the declaration in trespass alleged the taking and carrying away of sundry articles, and the defendant proved that he owned, and had a right to take and carry away, one of those articles; it was held, that this was no defence to the action, but the plaintiff was entitled to recover therein for the other articles which were taken wrongfully.

Where the great questions on the trial of an action of trespass *qu. cl. fr. et de bonis asportatis,* related to the title of the personal property, and the damages claimed had reference to it alone, and the cause was submitted to the jury, under a charge, which, if erroneous at all, was so as to certain questions relating to a breach of the plaintiff's close, and even as to these was favourable to the defendant; after a verdict for the plaintiff, it was held, that a new trial ought not to be granted for any such misdirection.

THIS was an action of trespass. The declaration stated, That at *Stamford,* on the 1st of *April,* 1839, the plaintiff was in the lawful and quiet possession and occupancy of the room over the store of *Andrew Perry* in said *Stamford,* situated a few rods *West* of the town-house; in which room the plaintiff had, for the year preceding that time, published, and was then engaged in publishing, a news-paper, called " *The Democratic Sentinel,*" and had in said room divers articles, of great value, which he then and there owned and possessed, and used in publishing said news-paper, *viz.* one cast-iron printing press, of the value of 300 dollars; 1600 *lb.* of types, of the value of 300 dollars; [and sundry articles of printing apparatus, furniture &c., specifically named]—that while he so owned and possessed said articles, the defendants, contrary to his mind and will, and without law or right, entered, with force and arms, into the plaintiff's said room; and having so entered into said room, the defendants, with like force and arms, contrary to the mind and will of the plaintiff, and without law or right, then and there broke in peices, injured and greatly damaged said printing-press and fixtures thereunto belonging; and did, then and there, with like force and arms, seize, take and carry away said printing-press, types &c., and converted and disposed of the same to their own use; and that the defendants did, then and there, with like force and arms, break and destroy the plaintiff's said furniture, &c.—by which wrong doings of the defendants, the plaintiff has been dispossessed of his said printing-press, types &c., broken up in his business of publishing said news-paper, and greatly injured in his business, in other respects.

The cause was tried at *Danbury*, *September* term, 1840, before *Storrs*, J.

The plaintiff claimed to have proved, and it was admitted by the defendants, that they entered the room mentioned in the declaration, and took away the printing-press, types, &c., in question. They claimed the right so to do; which the plaintiff denied.

It was admitted, by both parties, that the building in which said room was, formerly belonged to *David Hoyt*, and on his death, before the 1st of *April*, 1839, it was sold, under a decree of probate, to *Charles E. Smith;* that *Andrew Perry*, under a lease from *Hoyt*, hired and occupied it until the 1st of *April*, 1839; and that the plaintiff hired and occupied it, as a printing-office, under a lease from *Perry*, until the same time, and had therein, when the acts complained of were done, said press, types, &c.

The defendants claimed, that on the 1st of *April*, 1839, *Smith*, as purchaser and owner of the building, took possession of the whole thereof, including said room; and that the plaintiff was not in possession of said room, at the time when the acts complained of were done; which time, it was agreed by the parties, was subsequent to the 1st of *April*, 1839.

The plaintiff, admitting that *Smith* took possession of the rest of the building, claimed, that he, the defendant, took no possession of said room, and that possession thereof had never been surrendered by the plaintiff to him, but the plaintiff still remained in possession, holding over, after the expiration of his lease from *Perry*.

The defendants claimed, that the printing-press, types, &c., belonged to *John Brown* and *Jonathan B. Waterbury*, two of the defendants, and to other persons, as tenants in common; and to prove the title thereto, offered in evidence a bill of sale thereof, given by the plaintiff, accompanied with evidence of the identity of the articles therein mentioned with those taken by the defendants. The bill of sale, after reciting the facts, that a judgment had been recovered, by *Lewis Fairchild & Brothers*, against the plaintiff, *S. H. Minor, Lounsbury Palmer, Wm. & R. Hoyt, John Brown, William S. Wood* and *Jonathan B. Waterbury*, for a debt of 608 dollars, which debt was contracted for printing-paper for *The Stamford Sentinel*, the plaintiff being the owner of about one half of the press,

types and fixtures belonging to that establishment; and that said *Minor* and others had paid such judgment, proceeded thus: "Now therefore, I, the subscriber, in consideration of the premises, do hereby sell, assign and make over to the said *Minor, Palmer, W. & R. Hoyt, Brown, Wood* and *Waterbury*, all my right, title and interest, in and to said press, types and fixtures belonging to said establishment, to indemnify them for the payment of one half of said judgment. It is understood and agreed, that if the whole of said press, types and fixtures, shall prove sufficient to satisfy said judgment, said *Minor* and others are to have no claim on me, or on said press, &c., further than to indemnify them for said 608 dollars. In witness whereof, I have hereunto set my hand, this 31st day of *August*, 1835.            *Wm. H. Holly*."

The defendants also adduced evidence to prove, that *Smith*, after he purchased the building, *viz.* 1st of *April*, 1839, directed *Brown* and *W. Hoyt*, two of the proprietors of the press and other materials, then in said room, to remove them from said room and building. The defendants adduced further testimony to prove, that the plaintiff was intending to remove said press and materials out of this state and sell them, and that such intention had been communicated to them, before the entry and taking complained of; that the debt for which the property mentioned in the bill of sale was assigned, had never been paid, but was still justly due from the plaintiff; and that *Brown* and *Waterbury*, and the other defendants, acting by their order, for these reasons, peaceably entered into said room, and took and removed the property in question, as they had a right to do.

It was proved by the defendants, and not denied by the plaintiff, that *Smith*, after he purchased the building, and before the acts complained of, commenced repairing the building, particularly the second story, where said room was situated; and that in making such repairs, he entered, with his workmen, into said room, and were removing the partition between it and the room adjoining, and placing it so as to contract the former and enlarge the latter; and in erecting said partition, moved some of the materials used by the plaintiff in his printing establishment, to other parts of the room, in order to enable the workmen to erect the partition; and that these

*Fairfield,*
June, 1841.

Holly
*v.*
Brown.

acts of *Smith* and his workmen were done with the consent of the plaintiff.

The plaintiff claimed, that he had not surrendered, and *Smith* had not taken, possession of said room, before the entry and taking complained of; but until that time, the plaintiff continued exclusively in possession of said room, as lessee of *Perry*, and holding over after the expiration of his lease from *Perry ;* that while the plaintiff was so holding over, *Smith*, being desirous of making repairs on the building, was permitted, by the plaintiff, to commence said repairs, and remove the partition; and that the acts of *Smith* were in pursuance of said permission, and not for the purpose of taking possession of the room ; and that the plaintiff was not thereby disturbed in his possession of the room. It was not claimed by the plaintiff, however, that the defendants committed any violence other than going into the room and taking and removing the property ; nor did the plaintiff claim, that he was then in possession of the room otherwise than as a tenant holding over after the expiration of his lease from *Perry.*

The plaintiff also claimed, and offered evidence to prove, that after the execution of said bill of sale, and before the alleged trespass of the defendants, the printing establishment, when the bill of sale was executed, was given up and abandoned, by all the persons having any interest therein ; that the publication of the newspaper called " *The Stamford Sentinel,*" was discontinued ; and that the types, and all the materials connected with that establishment, except the printing-press, were taken away, by one *John Layden*, and carried to another town; that afterwards, the plaintiff established another newspaper, with a different title, *viz.* " *The Democratic Sentinel,*" and wholly unconnected with the former establishment ; that in establishing such new paper, he incurred great expense, and, with his own proper funds, purchased new materials, of the value of 300 dollars; that he continued to publish the latter paper until the alleged trespass of the defendants, and was then publishing it ; that in the publication thereof, he used none of the materials, except the old press; that at the time of the alleged trespass, all the property in the room occupied by the plaintiff, including the property so taken and carried away by the defendants, was purchased by him, after the breaking up of the former establishment, except

Fairfield,
June, 1841.

Holly
v.
Brown.

said press; and consequently, that *Brown* and others were in no way owners of, or entitled to, such property, except said press, by virtue of the bill of sale.

The defendants claimed, and offered evidence to prove, that the plaintiff, without their consent or knowledge, sold and disposed of the types specified in the bill of sale; and that the types so bought by him, were bought in lieu of those belonging to the former establishment, and to replace them; and that they belonged to *Brown* and others. At any rate, the defendants disclaimed all knowledge that the types so taken by them, were not those mentioned in the assignment.

· In conclusion, the defendants claimed, that by reason of the erection of said partition, and the other facts connected therewith, the plaintiff ceased to be, and *Smith* became, the legal possessor of said room; that the plaintiff could not maintain this action, unless he had, at the time when the alleged trespass was committed, the exclusive possession of the room, and especially, unless he had the possession thereof, to the exclusion of *Smith*, the owner; that if the plaintiff had actual possession thereof, at said time, by holding over, still *Smith* had right, at any time, peaceably to enter therein, and take possession thereof; and had right to authorize the defendants so to enter; and that the defendants accordingly had good right, under *Smith's* direction, so to enter; and that, if they had a right to enter, and entered accordingly, this action could not be maintained for any removal of the articles in question, whether they belonged to them or not; and that, even if the plaintiff had exclusive possession of the room, the defendants, being owners of said articles, or acting under the authority of such owners, had right peaceably to enter and remove the property, for the purpose of obtaining possession thereof; and that upon the facts proved, the types so taken by the defendants, were the property of *Brown* and others, named as vendees in the bill of sale, and the defendants had a right to take them.

The court charged the jury, that the plaintiff, in order to recover, must prove, that he was, at the time of the alleged trespass, in the actual possession of said room, and that the defendants, or some of them, entered it by force: that it was not, however, necessary, that such possession of the plaintiff should be exclusive; and if he was in possession jointly with

*Smith*, or any other person, it was a sufficient possession to maintain this action : that if he was not in possession exclusively, or jointly with another, he could not recover : that if the plaintiff continued in possession of said room after the expiration of his lease from *Perry*, and holding over, and was so in possession at the time of the alleged trespass, such possession was sufficient to enable him to maintain the action : that after the expiration of such lease, *Smith* had a right, or might authorize the defendants, peaceably to enter into, and take possession of, said room : that if the plaintiff, after the expiration of said lease, and without having surrendered the possession of said room to *Smith*, consented, at the request of *Smith*, and for his accommodation, that *Smith* might enter said room, for the mere purpose of erecting said partition, and the entry of *Smith* into said room, and his acts there were for that purpose only, and in pursuance of such permission, such entry and acts of *Smith* would not divest the plaintiff of his possession, or be deemed such a possession by *Smith* as to prevent the plaintiff from maintaining this action : but that if *Smith* went into and took possession of said room, for the purpose of occupying the same, and the plaintiff, by his permission, was suffered to store said types, &c., there, or to keep them there, for a short time, until he could conveniently find another place to which they might be removed,—in that case, the possession of said room would be deemed to be in *Smith*, and not in the plaintiff : and that it was a question of fact for the jury to find from the evidence, in view of these principles, whether the plaintiff was in the possession of the said room, at the time of the acts complained of : that if the plaintiff was then in possession of said room, yet if any of the defendants owned any of the property therein, they had good right to enter peaceably and take it away : that with regard to the title of the property taken away by the defendants, *Brown* and the other grantees in the bill of sale, acquired a title thereby to the establishment therein mentioned, as it was at the time of its execution : that if the plaintiff bought said new types and materials, to mix up with, and replenish the old ones, which had been worn out, or lost, or disposed of, the establishment would remain the same, and belong to said *Brown* and others, by virtue of said transfer ; but if the old establishment had been abandoned, and the new types and materials were pur-

chased, by the plaintiff, and with his funds, and brought by him to the said premises, for the purpose of establishing a new paper and printing concern, in such case, said types and materials so purchased by the plaintiff, would belong to the plaintiff, and not to said *Brown* and others, and the defendants had no right to take them away : and that if the defendants owned said press, but not the types and materials so purchased by the plaintiff, and had right to enter said room, and take such press ; yet if they also took away the types and materials, the plaintiff could recover for such taking of the types and materials.

The jury returned a verdict for the plaintiff to recover 325 dollars, damages ; and the defendants moved for a new trial for a mis-direction.

*Bissell* and *Hawley*, in support of the motion, contended, 1. That the charge was erroneous in instructing the jury, that if *Smith* was in possession with the plaintiff, the latter could maintain the action alone. This was erroneous, irrespectively of the facts claimed by the defendants, that they entered by the authority and direction of *Smith*. In trespass *qu. cl. fr.*, the plaintiff should have *exclusive* possession; at least, exclusive of the owner. 1 *Sw. Dig.* 512. 1 *Chitt. Pl.* 174. 177, 8. *Revett* v. *Brown*, 5 *Bing.* 7. 2 *Saund. Pl. & Ev.* 455, 6. *Austin* v. *Sawyer*, 9 *Cowen* 39. If the plaintiff could be considered in possession at all, *Smith* was in possession with him, with right to the entire possession. The plaintiff was in only *by sufferance*, without right, as against *Smith*, to stay a moment. If the plaintiff could, under such circumstances, recover at all, he could not, without joining *Smith*. If *Smith* had sued a wrong-doer alone, could the defendants have pleaded in abatement the non-joinder of the present plaintiff ? If not, it would follow, that the latter had no such possession that he could sue alone ; nor, indeed, at all.

The court should have charged the jury, that upon the facts, *Smith* had the sole legal possession ; that the plaintiff had no such possession as the law would recognize as the basis of a recovery. The acts done by *Smith* terminated the estate at sufferance, and thenceforth he was the sole legal possessor. And the result would be the same, if *Smith* entered and did the acts specified, without opposition, and even with

the consent of the plaintiff.  The acts done terminated the tenancy.  *Dorrell* v. *Johnson* & al., 17 *Pick.* 263.  1 *Sw. Dig.* 90.  *Jackson* d. *Phillips* v. *Aldrich*, 13 *Johns. Rep.* 106. 109.  *Doe* d. *Price* v. *Price*, 9 *Bing.* 356.  *Cruise's Dig. tit.* Estates at Will.  But by the charge, the plaintiff could recover, even if *Smith*, being in possession, had given the defendants authority and direction to enter and do the acts complained of: for the defendants claimed, that such was the state of facts; and the charge, being unlimited, covers the whole case, and applies to every state of facts claimed by the defendants.  Surely, the entry by authority of the owner himself, and he, at the time, in possession, could not have been wrongful.

2.  That even if *Smith* had not taken possession at all, the entry of the defendants, by his permission and direction, would be justifiable, and they no more liable to the plaintiff than *Smith* himself would have been.  Such an entry would have terminated the estate at sufferance.  There was no pretence of an entry with actual violence ; no other force than that which a mere entry necessarily imports ; no ouster at all.

3.  That if there had been an entry with force, by *Smith*, or any one acting under his orders, *this* action could not have been maintained.  The only remedy in such case, would be on the statute.  The owner cannot be liable, at common law, in trespass *qu. cl. fr.*, for even forcibly entering into *his own*, being entitled to immediate possession, how liable soever he might be, for the force used, in an action seeking to recover for the use of that force.

In this respect, the charge was calculated to mislead the jury ; for under it, they must have found, that if *Smith* had forcibly entered, he did not thereby acquire legal possession ; or, that if the defendants had forcibly entered under *Smith's* orders, they would be liable in this action to the plaintiff. *Turner* v. *Meymouth*, 1 *Bing.* 158.  *Taunton* v. *Costar*, 7 *Term Rep.* 431.  1 *Sw. Dig.* 510. 651.

4.  That if the defendants had right to enter and take the press, they could not be liable, in this action, for taking the types, &c.  That which justified the *entry*, justified the whole ground of action.

5.  That the defendants were not made trespassers *ab initio*, by taking the types, &c., especially, if they took them

*Fairfield,*
*June, 1841.*

Holly
*v.*
Brown.

by mistake, supposing them to be their own. It was claimed, by them, that they had no knowledge that these were not the same which had been assigned to them. They could no more be liable, in *this* action, than if a sheriff, who had lawfully entered a house to attach furniture, should, by mistake, seize an article not belonging to the debtor. Besides, they claimed a right to enter, not only as owners of the press, &c., but under authority from *Smith*, the owner. This being not an authority of law, but in fact, derived from the owner, an abuse of it could not render the defendants trespassers *ab initio*.

6. That *Smith*, at any rate, had a right to remove the types, &c., though belonging to the plaintiff; and his direction to the defendants would justify them in removing them, even though they made no claim to them, themselves. But under this charge, the jury must have found against the defendants, if they found that the types, &c., did not belong to them, even though they found that the defendants had right to enter and take the press, and took the types, &c., by mere mistake, verily believing them to be their own, and even though *Smith*, the owner, had ordered them to enter and remove the types, &c.

7. That even if the plaintiff could, in such case, recover, he could recover damages for the unjustifiable entry only, not for the value of the types. But the jury were instructed, in such case, to allow the value of the types, &c.

8. That the charge was erroneous as to the ownership of the types, &c. The bill of sale conveys a printing establishment,—not the business of publishing a particular paper. The question of the ownership of the types, &c., could not, as by the charge it is made to do, depend on the continuation or abandonment of that business. The jury should have been instructed, that if the plaintiff had worn out, or wrongfully disposed of, the old types, &c., and purchased the new, to complete the printing establishment—to make the establishment of which the press was a part, complete, as it was when assigned—the types, &c., belonged to the defendants. Instead of this, they were told, that if the plaintiff bought them, to carry on a new publication, the defendants had no right to take them.

*Booth* and *Ferris*, contra, insisted, That the possession of the plaintiff was sufficient to enable him to maintain the action; and that the charge to the jury was correct. They cited 1 *Chitt. Plead.* 131, 2. 176, 8, 9. 2 *Saund. Pl. & Ev.* 866. 3 *Stark Ev.* 1436, 7. *Addison* v. *Overend*, 6 *Term Rep.* 766. *Sedgworth* v. *Overend* & al. 7 *Term Rep.* 279. *Bloxam* & al. v. *Hubard*, 5 *East* 407. 420. 1 *Wms. Saund.* 291. *g. h.* *Wheelwright* v. *Depeyster*, 1 *Johns. Rep.* 472. *Brotherson* & al. v. *Hodges* & al., 6 *Johns. Rep.* 108. *Bradish* v. *Schenck*, 8 *Johns. Rep.* 151. *Story on Bail.* 30. 2 *Kent's Com.* 364.

*Fairfield,*
*June, 1841.*

Holly
v.
Brown.

STORRS, J. The declaration in this case is so inartificially drawn, that it is dificult to determine whether the entry upon the plaintiff's close and also the asportation of his property, or the asportation alone, is to be deemed the *gravamen* of the action. If, on this point, there is a fair doubt, from which the defendants can claim a benefit, it would be consonant with general principles to adopt the former construction, since it is the most unfavourable for the plaintiff, who was bound to be more precise in his pleading. The result, however, to which we have come, would not be varied in whichsoever light it is to be viewed.

Considering it, in the first place, as a count *de bonis asportatis* merely, it is obvious that it is unnecessary to examine any part of the charge, excepting that which relates to the title of the personal property alleged to be taken: for in that case, the other portion of it, which proceeded on the idea that it was to be treated as a count in *quare clausum fregit*, would be irrelevant, and therefore unimportant, and whether correct or not, no just ground for a new trial.

It is very clear, that if the plaintiff had wrongfully disposed of the property composing the printing establishment, which he had mortgaged to *Brown* and others, and converted the same into money, the articles in question, which were bought with the avails, would not, by mere operation of law, belong to the mortgagees. The title to those articles would be in the plaintiff, as though they were purchased with any other of his funds: for the legal title to the avails of the property thus sold vested in the plaintiff, although he would be liable to the mortgagees for the wrongful conversion of it.

*Fairfield,*
*June, 1841.*

Holly
*v.*
Brown.

The articles procured by the plaintiff being bought with his money, the title to them was presumptively in him ; yet if they were procured for the purpose simply of replenishing the establishment mortgaged, of supplying the place of articles belonging to it, which had been lost or destroyed by use, and were attached to, and incorporated with, it, accordingly, they would become a part of the establishment, and by right of accession, belong to the owners of it. They would form an incident to, and follow the title of, the printing establishment, to which they were attached, which would be the principal thing ; as if the borrower of a watch should replace its crystal, or of a musical instrument, one of its strings, keys or pipes, which had been lost, destroyed or become useless while in his service ; in which cases they would belong to the lender. *Omne principale trahit ad se accessorium.*

But it is claimed by the defendants, that, as *Smith,* the owner of the building, had a right to enter peaceably and dispossess the plaintiff, who was a mere tenant at sufferance, and directed the defendants, *Brown* and *Hoyt,* as owners of the property in question, to remove it therefrom, they would be justified in so doing. This claim proceeds on the ground that the defendants were acting lawfully as the servants of *Smith,* and in the exercise of his right of entry. The court charged the jury, that *Smith* had such right ; but the removal of the property, by the defendants, in pursuance of those directions, would not constitute such an entry upon the premises on behalf of *Smith,* as would revest him with the possession. It would not be for the purpose of making an entry, or as the agent of *Smith,* but on their own behalf, as owners of the property, and for the mere purpose of removing it. The court also charged the jury, that the defendants had a lawful right to enter said building peaceably, and remove the property of which they were owners. This right they had by authority of law, and not by permission of *Smith.* In exercising it, therefore, they would not act as his agent, or by virtue of his permission. But it was claimed only, that he authorized the defendants to remove their own property ; and the property which they did remove, is found by the jury to belong to the plaintiff.

The justification of the defendants, therefore, founded either on their right of property, or on the authority of *Smith,* fails.

The defendants, however, further claim, that the breach of the plaintiff's close is the gist of this action;—that it is necessary to prove such breach, in order to entitle him to succeed; and that if he failed to do so, or such breach was justified by the defendants, the plaintiff cannot recover for the asportation of his personal property.

If the *gravamen* consists solely of the breach of close, this claim is correct; but if it consists of that and also of the asportation, it is otherwise. The rules of pleading embrace and clearly define the doctrine applicable to this subject. The whole declaration or count must be answered. Thus, in trespass for breaking and entering a close, and with cattle eating up the grass, a justification, which is good for the breaking and entering, is bad as to the trespass with cattle. 1 *Saund.* 27. So in trespass for entering the close of the plaintiff and destroying the fence enclosing it, both must be answered; and a justification for merely breaking the close, is bad. 4 *Wend.* 647. The rule is, however, to be understood of that part of the declaration, which is material and the gist of the action; and therefore, when any thing is inserted in the declaration as matter of aggravation, the plea need not answer or justify that; for the answering of that which is the gist of the action, will cover the whole declaration, 1 *Saund.* 27. Thus, in trespass *qu. cl. fr.* for breaking and entering the dwelling-house of the plaintiff and debauching his daughter, the breaking and entering is the gist of the action, and the debauching mere matter of aggravation; and if the breach of close is not proved, the defendant is entitled to a verdict. 2 *T. R.* 168. So in trespass for breaking and entering the plaintiff's house, and expelling him therefrom, (so, however, that an assault and battery or trespass is not committed by such expulsion,) the expulsion is mere aggravation; and a justification of the breaking and entering covers the whole. 3 *T. R.* 292. The plaintiff need not prove all the allegations in his declaration; but he must prove enough of them to constitute a ground of action, and to entitle him to recover in the form of action which he has adopted, and that is sufficient. *Bul. N. P.* 94. *Hyde* v. *Morgan,* 14 *Conn. Rep.* 104.

This follows from the rule that every material part of the declaration must be answered, and is illustrated by the practice which has always prevailed, especially in actions for torts.

*Fairfield,*
June, 1841.

Holly
*v.*
Brown.

And even where distinct causes of action are embraced in the same count, provided they be such that the same species of remedy is appropriate to them all, although it may constitute duplicity in pleading, and in that respect be objectionable; yet, if the defendant does not take advantage of the objection, by special demurrer, he waives the objection, and must be prepared to meet all the charges; and if the plaintiff substantiates any of them, he will be entitled to recover. In order to apply these rules, and to distinguish between what constitutes the gist of the action of trespass, and what is mere matter of aggravation, it is only necessary to ascertain what allegations in the declaration describe a substantive ground of recovery in that kind of action: for although the declaration may contain averments descriptive of a cause of action of another kind, which may properly be introduced and proved, to enhance the damages, as shewing the aggravated character of the transaction; yet they will not be deemed to be any part of the gist of the suit, and do not form a distinct substantive ground of damage.

Thus, in the case of *Bennett* v. *Alcott,* 2 *Term Rep.* 166. 168., the debauching of the plaintiff's daughter formed a substantive ground of action, but not of an action of trespass, and therefore, no recovery in that case could be had upon it as for a substantive injury; and the only use which could be made of the debauching, was, to shew the character and enormity of the trespass, in order to enhance the damages. So in *Bracegirdle* v. *Orford,* 2 *M. & S.* 77., where the declaration was for breaking and entering the plaintiff's house, and without probable cause, and under a false charge, that the plaintiff had stolen property in her house, searching and ransacking the same, by means whereof, the plaintiff was interrupted in the quiet enjoyment of her house, and her character injured; the court held, that the declaration was good, the trespass being the substantive allegation, and the rest, matter of aggravation only; that the jury could not go beyond the damages for the trespass, and consider the rest as a subject of substantive damage, or in any other wise than as connected with the trespass; that the breaking and entering the house for the purpose of searching it, and under a false charge, constitutes the trespass; and that the false charge was not a distinct substantive ground of damage. But where in a declaration

in trespass *qu. cl. fr.* a distinct trespass to the person or goods is not alleged, it is settled, on the best authority, that the whole of the trespasses alleged, constitute the gist of the action; that they must all be answered; and that the plaintiff may recover for any of them, which are not denied or excused. In *Phillips* v. *Howgate,* 5 *B. & A.* 220., where the declaration alleged, that the defendant broke and entered the dwelling-house of the plaintiff, and assaulted and imprisoned him; and during such imprisonment, struck, pulled and pushed him about; the defendant pleaded in justification, that he arrested the plaintiff under process of court, and that the plaintiff, while in custody, having conducted himself in a violent manner, the defendant necessarily, and to prevent his escape, struck him, &c.; it was held, that this latter part of the justification not being proved, the plaintiff was entitled to judgment. And the reasoning of the court most fully sustains the principles above laid down. See also *Wheelock* v. *Young & al.,* 4 *Wend.* 647.

In the present case, the declaration alleges, not only an entry upon the plaintiff's close, but an asportation of his property. These constitute the gist of the action. They are neither of them matters of aggravation, but substantive and distinct causes of action, and proper to be redressed by this species of action. A special plea of justification not answering each and every of them, would be bad. Proof of either of them, will entitle the plaintiff to recover. The claim of the defendants, that proof of the breaking and entering is indispensable to a recovery, is, therefore, unfounded. The law was, indeed, so laid down to the jury, and, in this respect, favourably for the defendants; but, although there are cases countenancing the doctrine, especially that of *Ropes* v. *Barker,* 4 *Pick.* 239., the contrary is, in our opinion, conclusively established, both by principle and the weight of authority.

The defendants also insist, that, on the facts claimed to have been proved by the parties, the court should have charged the jury, that *Smith* had entered upon the premises, and divested the plaintiff of the possession thereof, so that the latter could not maintain this action. It is not every entry upon land by the landlord, that amounts to a dispossession of the tenant. If he enters, by invitation or permission of the tenant, for another object than to take possession, as, for in-

stance, to see the house, to dine, or to hunt with him, it is no dispossession: if, however, he enters and takes possession, by surrendry of the tenant, or without his consent, to exercise acts of ownership, or to take any profit, as to cut down trees, plough or dig the soil, or the like, it amounts to an entry and dispossession of the tenant. *Co. Litt.* 245. *b.* The entry, in order to revest possession, must not be merely casual, but *animo clamandi*, and for the purpose of taking possession ; and these are evinced by the acts and declarations of the party. 1 *Chitt. Gen. Prac.* 574. The character of the entry, in this case, was properly submitted to the jury, for them to find whether it was such as amounted to an ouster of the plaintiff.

An exception is taken to that part of the charge, which stated, that if the plaintiff was in possession of the *locus in quo* jointly with any other person or persons, it was a sufficient possession to maintain the action. In the language of *Williams*, in his note to *Cabell* v. *Vaughan*, 1 *Saund.* 291. *f. g.* " with respect to actions of *tort ;* such as trespass *quare clausum,* or for taking goods, trover, case for malfeasance, misfeasance, or nonfeasance, and such like actions of tort ; it seems fully and clearly established, that if only one of two or more joint tenants, parceners, tenants in common, partners, executors, assignees of bankrupts, and others who regularly ought to join, bring any such actions, the plaintiff must plead the omission in abatement, and cannot give it in evidence under the general issue." See cases cited in notes to 1 *Wms. Saund.* 291. *f. g.* and 5 *East* 420. 6 *T. R.* 766. 7 *T. R.* 279. 1 *Chitt. Pl.* 8. (Am. ed. 66.) Although the charge embraced in its terms a possession of the plaintiff jointly with *Smith,* as well as any other person, there was no claim made that any such concurrent possession existed in this case. Nor was the entry by the defendants claimed to be by authority of *Smith,* while he was in possession, either solely, or jointly with the plaintiff. The defendants, therefore, could not be prejudiced, by this part of the charge.

Nor is there any error in the charge, that if the defendants owned the press, but not the types and other materials purchased by the plaintiff, and had a right to enter to take, and did take, the press, but also took the types and other materials, the plaintiff could recover for taking the latter. The right of the defendants to enter, in order to take their prop-

erty, being by authority of law, an abuse of that authority, by a subsequent unlawful act, makes him a trespasser *ab initio* ; (2 *Stark. Ev.* 1444.) and it is obvious that a right to take their own, forms no excuse for taking the plaintiff's, property.

Independently, however, of the questions connected with the breach of the plaintiff's close, we think that the justice of the case would not require the granting of a new trial ; since it appears, that the great question on the trial related to the title of the personal property ; that the damages claimed had reference to it alone ; and that it was submitted to the jury favourably to the defendants, though, in our opinion correctly.

A new trial, therefore, is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.