HENRY RHINES, plaintiff in error, *v.* BENJAMIN T. PHELPS *et al.*, defendants in error.

*Error to Cook.*

A mortgage of personal property is in the nature of a pledge and conditional sale, to become absolute, and vest the thing mortgaged without redemption, upon condition broken, in the mortgagee. Until a forfeiture has thus accrued, the mortgagee has only a lien upon the pledge for the security of his claim against the mortgagor, and would be liable in damages if he were to sell the same, or otherwise convert it to his own use.

A mortgagee, with the consent of the mortgagor, may dispose of any portion of the mortgaged property, or the mortgagor might do the same with the mortgagee's permission; but property taken in exchange for mortgaged property cannot become substituted for, and stand in the place of that which had been included in the mortgage.

Where personal property is taken in execution, and claimed and replevied by a third person, although delivered to him upon the execution of the writ, it is so far still considered in the custody of the law, that it cannot be taken from the possession of the plaintiff in replevin, during the pendency of such suit, by any writ or execution against the party as whose property it had been previously seized, unless he had acquired some new title to it subsequent to the original levy; or, unless it manifestly appeared that such suit had been instituted with the fraudulent design to cover up the property and defraud the creditors of the defendant in execution.

All conveyances of goods and chattels, where the possession is permitted to remain with the vendor, are fraudulent *per se*, and void as to creditors and purchasers, unless the retaining of the possession be consistent with the deed.

An absolute sale of personal property, where the possession remains with the vendor is void as to creditors and purchasers, though authorized by the terms of the bill of sale.

REPLEVIN in the Cook Circuit Court, brought by the defendants in error against the plaintiff in error, and heard before the Hon. Richard M. Young and a jury, at the November term 1844, when a verdict was rendered in favor of the plaintiffs below.

The pleadings, evidence and instructions asked, appear in the Opinion of the Court.

The cause was submitted on the written arguments of counsel, which have been condensed for this Report.

*I. N. Arnold*, for the plaintiff in error.

1.  Can a mortgagee hold property under a mortgage, which is not described in it, but which has, by a verbal

agreement, been substituted for that mentioned in the mortgage?

It is unnecessary to cite authority on this point, but see 2 Wend. 596.

It was there decided that liquors and groceries in a store which had pretty much changed since the giving the mortgage, could not be held under it. This case is much stronger than that against the mortgagee. A case cited in 17 Wend. 492, is directly in point. See, also, 4 Metc. 306; 14 Pick. 497; 21 Maine, (8 Shepley,) 86; 6 Mann. & G. 245.

In the case of *Jones* v. *Richardson*, decided by the Supreme Court of Massachusetts in 1846, and reported in the December No. of the Law Reporter, all the authorities on this point are reviewed, and it is decided that the mortgagee cannot hold, as against creditors, property acquired subsequently to the date of the mortgage, and this was where the mortgage was for a stock of goods. But in the present case, the mortgage describes a black horse, which the mortgagor sold on his own account, and substituted a bay horse, and yet the mortgagee seeks to hold this bay horse under the mortgage for a black horse. What a door for the perpetration of fraud would be opened by such a construction!

2. The record which was read of the suit between Phelps and Reed in Ogle county, ought not to have been read in evidence. It was a proceeding between different parties, and had no tendency to prove title in the plaintiff. It was *res inter alios.*

3. The second instruction asked by defendant was the law, and should have been given. It was this: "If the jury believe from the evidence that the property remained in possession of Warner after the expiration of the time specified in the mortgage, it is fraudulent and void as against a judgment creditor." This is expressly decided in 2 Wend. 596.

4. The third instruction asked by the defendant was the law, and should have been given. It is this: "If the jury believe that the mortgage was void, and that the title never passed to Phelps, and that Warner was in possession at the

Rhines *v.* Phelps *et al.*

time of the levy by Rhines, the defendants are entitled to recover." If the mortgage is void, and Phelps never had title, was not defendant entitled to recover in this case?

5. The fifth instruction asked for by defendant was proper, and should have been given. It was this: "If the jury believe from the evidence that the execution of the mortgage and the bringing the suit in Ogle county, were all a part of one fraudulent transaction to cover up Warren's property and keep it from his creditors, the title never passed to Phelps, and the defendant is entitled to recover."

Was not this the law? Does not fraud vitiate all transactions? If the whole proceeding was fraudulent to cover up Warner's property and keep it from his creditors, shall it stand? Rhines was not a party to this suit. It was competent for him to show it all a fraud.

*O. Peters,* for the defendants in error.

1. The first position assumed by the plaintiff in error is, that a mortgagee of personal property cannot hold property under the mortgage, not described in it, but which has, by agreement, been substituted for that described in the mortgage.

This position cannot be sustained, and the authorities do not support it.

As between mortgagor and mortgagee, upon the execution and delivery of the mortgage, the legal title of the property passes to the mortgagee. The following authorities fully establish this: 1 U. S. Dig. 369, § 31; Story on Bailm. §§ 286–7, 300; 12 Johns. 89–90; 2 Story's Eq. Jur. § 1030.

This point being established, it would seem to follow as a necessary consequence, that with the consent and under the direction of the mortgagee, the property can be sold, or exchanged, and the property received in exchange, be held upon the same conditions, and subject to the same defeasance as the property originally conveyed. If this be not so, an owner of property cannot sell it.

The authorities referred to fall very far short of maintaining the doctrine contended for by the plaintiffs.

2. The second point relied upon is, that the Circuit Court

erred in permitting the record from the Circuit Court of Ogle county to be read in evidence, it being *res inter alios*.

The principle, upon which it was contended and decided that this record was competent evidence, is, that the property was in the custody of the law, and was not, therefore, subject to be levied upon.

The action of replevin is a proceeding *in rem*, and not *in personam*. The plaintiff gives a bond, and the officer takes the property and delivers it to the plaintiff in replevin. The property is thus put in the custody of the law, and the plaintiff becomes its *custodier*, and must have it to return in case the judgment goes against him. If it can be levied upon and wrested from him, he may be liable on his replevin bond, and at the same time, by process of law, be disabled from making a return of it.

The bond given by the plaintiff in replevin is not a substitute for the property, but a security that the property shall be forthcoming to abide the order of the Court.

This is fully considered by the Supreme Court of the United States, in the case of *Hogan* v. *Lucas*, 10 Peters, 400. The case is not only decisive of this point, but of the whole case, and shows that the levy was void, and gave no rights to the officer (Rhines) making the levy.

3. The third point relied upon by the plaintiff in error is, that the Circuit Court refused to give the second instruction, and the case of *Divver* v. *McLaughlin*, 2 Wend. 600, is relied upon.

The Court, by this instruction, is virtually asked to decide that the retaining of the possession by the mortgagor after the time of payment specified in the mortgage, is conclusive evidence of fraud. The case cited does not show this, or in any manner sustain it. There, the fact of the continuing possession after the mortgage had become forfeited, was one of three things, upon which the Court decided the mortgage fraudulent, but no intimation is given that this was of itself conclusive of fraud.

4. The point insisted upon fourthly is, that the third instruction asked was correct, and the Circuit Court erred in refusing to give the instruction.

This was properly refused for several reasons:

It proposed to leave a question of law to the jury to determine. It is a question of law for the Court to decide whether the mortgage was void, and whether the title passed. The jury are to find the facts which evidence the fraud, but the Court are to determine whether the facts found constitute a constructive fraud. Whether the title passed by the deed or not, is to be determined by the construction of the language used in the mortgage, and the Court is to determine what is the legal effect of such language. 3 Stark. Ev. 1006-7, side paging and notes, and cases there referred to. If the deed was sufficient to pass the title, (and there is no doubt of this,) no question could properly be submitted to the jury on the subject.

Some part of this instruction might have been given, but it was asked as a whole, and as the party did not choose to modify it he must abide by the decision. It would clearly have been error for the Court to have instructed the jury that it was for them to determine whether the mortgage was valid or not.

But the last proposition of the instruction asked was not law. Had the Court been asked to instruct the jury, that if the property was in the possession of Warner contrary to the stipulations between the parties, it might have been correct, for though the time of the payment of the mortgage debt had passed, yet the time for this payment and the extension of the time for Warner to have returned possession may have been by parol. The mode of executing a written contract may be altered by parol.

In this case, the "retaining of the possession was consistent with the deed." *Thornton* v. *Davenport,* 1 Scam. 298.

5. The plaintiff in error insists, fifthly, that the refusal of the Circuit Court to give the fifth instruction asked by the defendant below, was erroneous.

Whether the instruction was correct as containing a correct abstract legal proposition, is not very material, because the case does not show any thing to impeach the proceedings in Ogle county. The property had been levied upon as the property of Warner, by a constable of Ogle county; the

Phelpses had replevied it from the constable; this suit was pending, as shown by the record introduced in evidence. Then, suppose the mortgage was fraudulent, the property would be holden by the constable upon his levy, even though the Phelpses had brought their replevin to aid the original fraud. A fraud between the Phelpses and Warner would not defeat the lien of the constable, and the Phelpses by replevying and giving the replevin bond became the keepers of the property for the constable; so that they were entitled to recover by reason of the special property acquired by them thereby. If the transaction was really fraudulent, then the levy by the constable in Ogle county was good, and upon the determination of that case the property must be returned to him. The instruction was, therefore, properly refused, on two grounds: 1st, Because there was no evidence to show that the judgment creditor of Warner, or the constable of Ogle county, participated in the fraud; and 2d, Because the property was in the custody of the law, and the Phelpses were the keepers thereof, under the authority of law and the legal process in the hands of the constable of Ogle county.

The Opinion of the Court was delivered by

PURPLE, J.* The defendants in error on the 20th January, 1841, brought an action of replevin against the plaintiff in the Cook county Circuit Court for one bay horse, and one two horse wagon.

The plaintiff in error, Rhines, who was the defendant below, pleaded that he did not take and detain the property as charged in the declaration, and gave notice, that under the plea he would give in evidence that he was a constable holding an execution in favor of one Charles Walker, against one Merrit Warner; that the property belonged to Warner, and that he took the same by virtue of said execution.

From the bill of exceptions in the case, it appears that Warner being indebted to the defendants in error, on the 9th day of March, A. D. 1840, mortgaged to them certain personal property consisting of horses, wagons, &c. The

---

* Justices THOMAS and DENNING did not sit in this case.

mortgage was conditioned to be void upon the payment of three hundred dollars at the expiration of six months, and contained a stipulation that the property should remain in the possession of the mortgagor until the expiration of said time. It is further shown that the property in controversy in this suit, was no part of the property described in the mortgage; that Warner purchased the horse of Jacob B. Crist, in the spring of 1840, after the execution of the mortgage, and the wagon of John Davlin of Chicago, in May or June, 1840; that Warner exchanged this horse and wagon, (as he stated,) for a certain horse and wagon mentioned in his mortgage to defendants, and that he sold those he received in exchange on his own account, and that it was agreed verbally between him and the defendants, that this property was in the same manner as that for which it had been exchanged, to be subject to the mortgage.

The mortgage was read in evidence, the plaintiffs' counsel objecting and excepting to the same.

The plaintiffs below also read in evidence the record of a replevin suit, commenced in the Ogle county Circuit Court, on the 28th day of August, A. D. 1840, in which the defendants in error were plaintiffs, and one Lyman Reed defendant; by the proceedings in which it appears that Reed had before that time levied on the same property by virtue of an execution which he held as a constable of said county against the said Warner, and that the same suit was still pending and undetermined in said Court.

To the admission of this evidence the plaintiffs here also objected and excepted.

At the request of the counsel for the plaintiffs below, the Court instructed the jury: "That if they should believe, from the evidence, that the horse and wagon in question were taken in execution by Reed, a constable of Ogle county, of this State, and were replevied by the plaintiff prior to the defendant's levy, and the said replevin suit was pending in the Ogle Circuit Court at the time the defendant made his levy in Cook county, that such levy by the defendant was not legal, and they ought to find the issues for the plaintiff."

The defendant below excepted to the said instruction.

The Court was then requested to instruct the jury on the part of the defendant below: "That if the jury believe, from the evidence, that the property remained in possession of Warner after the expiration of the time specified in the mortgage, it is fraudulent and void against a judgment creditor." "If the jury believe, from the evidence, that the execution of the mortgage and the bringing the suit in Ogle county was all a part of one fraudulent transaction, to cover up Warner's property and keep it from his creditors, the title never passed to Phelps, and the defendant is entitled to recover."

The last instruction was refused, the first given modified as follows: "That if the jury believe that Warner retained possession of the property in a manner inconsistent with the mortgage, by continuing in possession after six months had expired, it was only *prima facie* evidence of fraud, but subject to explanation by the plaintiff; that such retaining possession did not render the mortgage fraudulent *per se*, but *prima facie* evidence only of fraud, and subject to explanation by the plaintiff."

To the refusal of the Court to give the last instruction, as asked, and also to the modification of the first instruction, the defendant below excepted.

A verdict was found for the plaintiffs below. The defendant then moved for a new trial, which was overruled, and judgment rendered on the verdict; and said defendant excepted to the opinion of the Court.

The several rulings and decisions of the Court are now assigned for error.

Three questions seem naturally to be presented by this record:

1st. Whether the defendants in this case acquired any title to the property in question by virtue of their mortgage?

2d. Whether the pendency of the action of replevin in Ogle county placed the property beyond the reach of an execution against Warner until that action was determined? and

3d. Whether the Court gave a proper construction to the law relative to sales and mortgages of personal property.

Upon the first point, it is contended by the defendants' counsel, and numerous authorities are cited to sustain the doctrine, that in the case of a mortgage of personal property, when the mortgage is delivered, the legal title to the property passes to the mortgagee; and that, having so passed, the mortgagee may sell the property himself, or appoint the mortgagor or any other person his agent to make such sale, and in exchange to take other property, which the mortgagee can hold in substitution of the former, subject to the conditions and defeasance in the mortgage. I know of no principle upon which this doctrine can be sustained.

A mortgage of personal property is in the nature of a pledge and conditional sale, to become absolute, and vest the thing mortgaged without redemption, upon condition broken, in the mortgagee. Until a forfeiture has thus accrued, the mortgagee has only a lien upon the pledge for the security of his claim against the mortgagor, and would be liable in damages if he were to sell the same or otherwise convert it to his own use. This liability being alone to the mortgagor, doubtless by his consent, he might dispose of any portion of the mortgaged property, or, the mortgagor might do the same with his (the mortgagee's) permission. But that the thing taken in exchange for the mortgaged property can, by the verbal agreement of the parties, become substituted for, and stand in the place of that which had been included in the mortgage, is an absurdity. The elementary principle of the law which prohibits any and every contract from being partly in writing under seal, and partly in parol, forbids it.

Under this view of the law, about the correctness of which there cannot be a doubt, the defendants had no title to the property in controversy in this suit by virtue of their mortgage; consequently, the same was improperly admitted in evidence to the jury.

As to the second point, we are of opinion that in the decision of the Court in admitting the record of the replevin suit in Ogle county there was no error.

Rhines *v.* Phelps *et al.*

If that action had been commenced in good faith, and under an honest conviction that the plaintiff in the same was the owner of, or had the right to the possession of the property, the law would not permit a subsequent execution against the same defendant, Warner, pending the litigation, to remove the property from the possession of such plaintiff, and thereby put it beyond his power to return the property if a return should be awarded, according to the conditions of his replevin bond executed to the sheriff at the commencement of the suit, unless it could be shown that Warner had acquired some title to the same subsequent to the commencement of said suit.

The case of *Hogan* v. *Lucas*, 10 Peters, 400, cited by the defendants' counsel, is decisive of this question.

Where personal property is taken in execution, and claimed on a replevin by a third person, although delivered to him upon the execution of the writ, it is so far still considered in the custody of the law, that it cannot be taken from the possession of the plaintiff in replevin, during the pendency of such suit, by any writ or execution against the the party as whose property it had previously been seized; unless he had acquired some new title to it subsequent to the original levy; or unless it manifestly appeared that such suit had been instituted with the fraudulent design, to cover up the property and defraud the creditors of the defendant in execution.

With regard to the third point, we are clearly of opinion that the Circuit Court was mistaken in the law as applicable to such cases. In many of the States the decisions upon this question have been conflicting. In this Court, however, the question has been distinctly settled, and we believe upon reason, and the most approved authorities.

In the case of *Thornton* v. *Davenport*, 1 Scam. 296, the rule is held to be, that all conveyances of goods and chattels where the possession is permitted to remain with the vendor, are fraudulent *per se*, and void as to creditors and purchasers, unless the retaining of the possession be consistent with the deed; and that an *absolute* sale of personal property, where the possession remains with the vendor, is void as to

Rhines *v.* Phelps.

creditors and purchasers, though authorized by the terms of the bill of sale. Apply these principles to the present case, and it will be seen, that whether the plaintiff below was entitled to claim the property under his mortgage, or by exchange or purchase in some other manner, it was error in the Court to refuse the instructions called for by the counsel for the plaintiff, more especially so, as there was some evidence that the property remained or was repeatedly in the possession of Warner, after the expiration of the six months mentioned in the mortgage as the time for which he was to retain it. If the defendants claimed it by virtue of the parol agreement made subsequent to the execution of the mortgage, then, as we have before seen, if they permitted it to remain in Warner's possession, the contract would be considered fraudulent and void as to the creditors of Warner. In either event, there was evidence from which the jury might possibly have inferred that there was fraud in the whole transaction, including the mortgage, the subsequent arrangement about the exchange of property, and the institution of the suit in Ogle county; and however slight the circumstances may be, we cannot tell what influence they may have had, if under the instructions, the jury had been permitted to consider them.

The judgment of the Circuit Court is reversed with costs, and the cause remanded with directions to that Court to award a *venire de novo.*